PERKINSCOie

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

T  +1.206.359.8000
F  +1.206.359.9000
PerkinsCoie.com

February 21, 2019

Eric D. Miller
EMiller@perkinscoie.com
D.  +1.206.359.3773
F.   +1.206.359.4773

Patricia S. Connor
Clerk
United States Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, VA 23219

Re:     Erie Insurance Company v. Amazon.com, Inc., No. 18-1198
        (oral argument scheduled for March 21, 2019)

Dear Ms. Connor:

I am writing under Federal Rule of Appellate Procedure 28(j) to call the Court's attention to the published decision of the Ohio Court of Appeals in *Stiner* v. *Amazon, Inc.*, 2019-Ohio-586 (Ohio Ct. App. Feb. 19, 2019), a copy of which is attached.

The key issue in this case is whether Amazon is subject to a product-liability claim as the "seller" of an allegedly defective product purchased from a third party using the Amazon marketplace. The court in *Stiner* considered precisely that issue, affirming the trial court's determination that Amazon was not a "seller" or "supplier" of a defective product purchased from a third party using the Amazon marketplace and therefore was not subject to liability under Ohio product liability law. Slip op. 9-10. In reaching that conclusion, the Ohio Court of Appeals noted that "a review of case law from other jurisdictions shows a disinclination to hold Amazon liable as a seller, distributor, or supplier of the products offered for sale on the Amazon Site by third-party sellers." *Id.* at 13-14.

Although this case is governed by Maryland law, not Ohio law, the decision in *Stiner* is nevertheless highly relevant here. Maryland courts have looked to the law of other jurisdictions in product-liability cases. *See*, *e.g.*, *Ellsworth* v. *Sherne Lingerie, Inc.*, 495 A.2d 348, 354-55 (Md. 1985). The decision in *Stiner* is particularly significant because it is the first appellate decision from any jurisdiction to consider whether Amazon is subject to a product-liability claim based on an allegedly defective product purchased from a third-party seller.

Respectfully submitted,

*s/ Eric D. Miller*

Eric D. Miller
Counsel for Appellee Amazon.com, Inc.

cc: Counsel of Record (by ECF)

ATTACHMENT

[Cite as *Stiner v. Amazon, Inc.*, 2019-Ohio-586.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| DENNIS STINER | C.A. No. 17CA011215 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| AMAZON.COM, INC. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No. 15CV18837 |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2019

SCHAFER, Presiding Judge.

{¶1}  Plaintiff-Appellant, Dennis Stiner, Administrator of the Estate of Logan James Stiner ("Stiner"), appeals the trial court's entry of summary judgment in favor of Defendants-Appellees, Amazon.com Inc.; Amazon Fulfillment Services, Inc.; Amazon Web Services, Inc.; Amazon Services, LLC ("Amazon"), as to all claims asserted against Amazon in Stiner's second amended complaint.  For the reasons that follow, we affirm.

I.

{¶2}  This matter arises from the circumstances surrounding the tragic death of an eighteen year old high school student, Logan Stiner, on May 27, 2014.  His father, Dennis Stiner, brought this action as administrator of Logan's estate.  In addition to Amazon, Stiner also named Tenkoris LLC, d/b/a Guardian Wholesale, The Bulk Source, Hard Rhino, Guardian BioSciences (collectively "Tenkoris"); Green Wave Ingredients, Inc. ("Green Wave"); CSPC Pharmaceutical Co., Ltd. ("CSPC"); as well as one individual, "K.K.", as defendants in this action.  The claims

as to all defendants other than Amazon were resolved or otherwise disposed of prior to this appeal.

{¶3} In February of 2014, K.K., a friend of Logan, searched for a "pre-workout" supplement and ultimately purchased Hard Rhino Pure Caffeine, a pure caffeine powder. She purchased the caffeine powder through Amazon's website (the "Amazon Site") from a seller identified as The Bulk Source. The Bulk Source fulfilled and shipped the order to K.K. K.K. then shared a portion of the caffeine powder with Logan. Logan ingested a fatal dose of caffeine powder, causing acute caffeine toxicity, which resulted in his death by cardiac arrhythmia and seizure.

{¶4} After Logan's death, Stiner commenced this action against Amazon and the other named defendants and eventually proceeded on the second amended complaint, which asserted ten claims against Amazon. Amazon and Stiner each filed a motion for summary judgment. The trial court granted Amazon's motion and entered judgment in favor of Amazon as to all claims in the second amended complaint.

{¶5} Stiner filed a timely appeal of the trial court's judgment, and raises five assignments of error for our review. For ease of analysis, we consolidate the first four assignments of error and consider separately the fifth assignment of error.

II.

**Assignment of Error I**

**The trial court erred in failing to "view the facts in the light most favorable to the non-moving party and resolve any doubt in favor of the non-moving party" and nevertheless granting summary judgment.**

**Assignment of Error II**

**The trial court erred in holding, as a matter of law, that Amazon could not be held liable as a supplier of the lethal caffeine powder under Ohio's Product Liability Act.**

**Assignment of Error III**

**The trial court erred in holding, as a matter of law, that Amazon could not be held liable for offering for sale an adulterated product under Ohio's Pure Food and Drug Law.**

**Assignment of Error IV**

**The trial court erred in holding that Amazon's status as a supplier or offeror of the lethal caffeine powder did not raise genuine issues of material fact that preclude summary judgment.**

**{¶6}** In the first assignment of error, Stiner advances several arguments regarding the trial court's decision to grant summary judgment in favor of Amazon. Stiner contends that the trial court failed to view the facts in a light most favorable to Stiner as the nonmoving party. Further, Stiner contends that the trial court erred by determining, as a matter of law, that Amazon was not a "supplier" or "offeror" of the caffeine powder. Stiner also argues that the trial court failed to recognize factual disputes that precluded the grant of summary judgment. Although Stiner presents these arguments throughout four assignments of error, the contentions raised in the separate assignments are somewhat interdependent. To provide a thorough analysis, we consider Stiner's arguments collectively and in the context of the claims implicated by Stiner's contentions.

## A. **Summary Judgment Decision**

**{¶7}** The trial court issued its ruling on the parties' cross-motions for summary judgment, granting Amazon's motion. The court entered judgment in favor of Amazon as to all of the claims asserted in Stiner's second amended complaint.

{¶8} The first three counts of Stiner's complaint asserted claims pursuant to Ohio's pure food and drug law, R.C. 3715.01 et seq., alleging the following violations: count one, R.C. 3715.52(A)(1)-(3), prohibiting the certain acts relative to adulterated and misbranded drugs; count two, R.C. 3715.64 regarding a misbranded drug; and count three, R.C. 3715.83, regarding adulterated supplements. The trial court granted summary judgment on these three claims in the absence of evidence that Amazon sold or offered for sale the caffeine powder at issue.

{¶9} In counts four through seven, Stiner pleaded claims under the Ohio products liability act at R.C. 2307.71 to R.C. 2307.80. Counts four through six asserted the following claims for manufacturer liability: count four, R.C. 2307.75, for a product defective in design or formulation; count five, R.C. 2307.76, for a product defective due to inadequate warning or instruction; and count six, R.C. 2307.77, for a product failing to conform to a representation. Count seven alleged supplier negligence pursuant to R.C. 2307.78. The trial court granted summary judgment on counts four through seven finding as a matter of law that Amazon was not a "supplier" under the facts of this case and did not otherwise participate in placing the caffeine powder into the stream of commerce.

{¶10} In count eight, Stiner asserted a claim for breach of an implied warranty of merchantability pursuant to R.C. 1302.27. Count twelve asserted a claim for fraud. Stiner presented a demand for punitive damages in count eleven. The trial court also granted summary judgment as to these three counts. However, because Stiner has not challenged on appeal the trial court's decision as to counts eight, eleven, and twelve, we confine our analysis in these assignments of error to the trial court's entry of judgment on Stiner's claims in counts one through seven. We consider the products liability claims separate from the pure food and drug claims.

**B. Standard of Review**

{¶11} Before summary judgment may be granted under Civ.R 56(C), the trial court must determine each of the following:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). We review a trial court's ruling on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶12} Summary judgment proceedings create a burden-shifting paradigm. To prevail on a motion for summary judgment, the movant has the initial burden to identify the portions of the record demonstrating the lack of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In satisfying the initial burden, the movant need not offer affirmative evidence, but it must identify those portions of the record that support its argument. *Id.* Once the movant overcomes the initial burden, the non-moving party is precluded from merely resting upon the allegations contained in the pleadings to establish a genuine issue of material fact. Civ.R. 56(E). Instead, it has the reciprocal burden of responding and setting forth specific facts that demonstrate the existence of a "genuine triable issue." *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996). "[E]xpressions of speculation or assumptions in deposition testimony and affidavits are insufficient to sustain the non-movant's burden." *Messer v. Summa Health Sys.*, 9th Dist. Summit No. 28470, 2018-Ohio-372, ¶ 31.

## C. **Factual Background**

### 1. K.K. 's Purchase and Logan's Death

**{¶13}** On February 27, 2014, Logan's friend, K.K., searched online through the Amazon Site for a new "pre-workout" supplement. The search results returned a number of pre-workout products. K.K. clicked on one pre-workout product, which prompted the display of related products, or "products that you may like," including a product called Hard Rhino Pure Caffeine. K.K. clicked on the link for Hard Rhino Pure Caffeine, a pure caffeine powder, which was offered on the Amazon Site by a seller identified as The Bulk Source.

**{¶14}** K.K. decided to purchase the Hard Rhino product, 1.1 lbs. of caffeine powder. She placed the order through the Amazon website using an Amazon gift card to cover a portion and her mother's credit card to cover the balance. The seller, The Bulk Source, fulfilled the order and shipped the caffeine powder directly to K.K. K.K. received the product sometime in the first week of March 2014. She began using the caffeine powder by mixing it in her drink in a dosage she determined by reading the reviews of the product.

**{¶15}** During a text message exchange on May 26, 2014, K.K. told Logan she would "give [him] some of [her] caffeine powder if [he] want[ed.]" Logan accepted K.K.'s offer, and she brought a bag containing approximately one cup of the caffeine powder to him the following day. K.K. did not show Logan the product package or label, but they exchanged text messages discussing reasonable dosage and the dangers of ingesting too much caffeine. K.K. informed Logan that an eighth of a teaspoon is 100mg of caffeine and comparable to "16 oz. of coke" while a quarter teaspoon contains more caffeine than an energy drink. She indicated that she

typically used an eighth of a teaspoon of the caffeine powder in the morning, and another after school. She cautioned that taking too much could cause Logan to die.

{¶16} Logan died on May 27, 2014. The Lorain County Coroner's report indicated that he died as a result of acute caffeine toxicity which caused cardiac arrhythmia and seizure. Although the toxicology report did not specify the exact amount of caffeine in Logan's system, for the limited purpose of our present review we will assume that the caffeine powder K.K. gave to Logan caused his death.

2. The Product, the Businesses, and the Transaction

{¶17} The Bulk Source is the tradename under which Tenkoris, a supplement wholesaler, sold the caffeine powder under the brand name "Hard Rhino." Tenkoris sourced the caffeine powder and purchased it in bulk from Green Wave, a distributor of dietary supplements. Green Wave imported the caffeine powder from a manufacturer in China, CSPC, and delivered it to Tenkoris.

{¶18} At the relevant point in time, products available through Amazon were sourced and sold in multiple ways. In some instances, Amazon acts as a seller, retailing products offered through the Amazon Site. The majority of sales, however, are through third-party sellers who either, (1) source and sell their products which are stored, shipped and handled through Amazon facilities—Amazon-Fulfilled Products—or (2) the third-party seller sources, sells, fulfills, ships, and delivers its products—Seller-Fulfilled Products. Amazon's Business Solutions Agreement ("BSA") states that "Amazon Services Business Solutions" is "a suite of optional merchant services including the following services: Selling on Amazon, Amazon Webstore, and Fulfillment by Amazon."

{¶19} To offer its Seller-Fulfilled Products through the Amazon Site, Tenkoris entered into a BSA with Amazon. This enabled Tenkoris, using the trade name The Bulk Source, to create a product listing for Hard Rhino Pure Caffeine and offer it for sale on the Amazon Site. Tenkoris was required to input all product details, information, and images for the listing and set the sale price for the product. Amazon then assigned an identification number and activated the listing.

{¶20} When K.K. placed the order for the Hard Rhino—500 grams of the caffeine powder for $14.99 plus $5.49 for shipping—Tenkoris received notification of the sale from Amazon. Tenkoris then fulfilled the ordered by reviewing the customer information for the transaction, assembling and packaging the product, and then shipping it directly to K.K. Amazon never had possession of the caffeine powder Tenkoris shipped and supplied to K.K. Amazon captured and processed the payments for the sale, and remitted the proceeds to Tenkoris, less the fees and costs retained by Amazon for its services.

{¶21} At the time K.K. purchased the caffeine powder, there were no federal or state regulations prohibiting or restricting the sale of caffeine powder. However, following Logan's death, the Food and Drug Administration did issue a safety alert warning consumers of the dangers of caffeine powder. Amazon removed listings for pure caffeine powder and prohibited the sale of such products though Amazon.

## D. Claims under Ohio Products Liability Act

{¶22} Stiner claimed that Amazon was liable as a supplier of the caffeine powder based on supplier negligence as stated in R.C. 2307.78(A)(1). Additionally, Stiner stated three claims for products liability pursuant to R.C. 2307.75 (design defect), R.C. 2307.76 (inadequate warnings or instructions), and R.C. 2307.77 (non-conformance to representation). These three

claims impose liability on "manufacturers" which are defined as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." R.C. 2307.71(A)(9).

{¶23} Stiner has not challenged the trial court's conclusion that Amazon was not a manufacturer. Rather, it is Stiner's position that Amazon is liable as if it were a manufacturer pursuant to R.C. 2037.78(B). "A supplier of a product" may be liable for compensatory damages based on products liability claims brought pursuant to R.C. 2307.75 through 2307.77 "as if it were the manufacturer of that product" if one of eight stated factors apply. R.C. 2307.78(B). Stiner claims that one or more of these factors applies to Amazon in its alleged role as a supplier.

{¶24} There is a threshold consideration applicable to all four of Stiner's products liability claims; to be liable for any of these claims Amazon must fit the definition of a "supplier" as stated in R.C. 2307.71(A)(15). A supplier is defined as either of the following:

> (i) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;

> (ii) A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm.

R.C. 2307.71(A)(15)(a).

{¶25} The trial court concluded that Amazon did not install, repair, or maintain any aspect of a product and, therefore, did not fit the definition of a supplier under R.C. 2307.71(A)(15)(a)(ii). Further, the trial court examined the evidence in light of R.C. 2307.71(A)(15)(a)(i) and determined that Tenkoris, not Amazon, was the "seller" and that Amazon did not distribute, lease, prepare, blend, package, or label the caffeine powder. The essential question before the trial court was "whether or not Amazon qualifies as a 'supplier' for 'otherwise participat[ing] in the placing of a product in the stream of commerce'" as stated in

R.C. 2307.71(A)(15)(a)(i). The trial court concluded that "Amazon, under the facts of this case, was not a supplier and did not otherwise participate in the placing of the caffeine powder in the stream of commerce." Stiner contends that the trial court erred in its resolution of that issue.

1. Application of the Law to the Facts of the Case

**{¶26}** To give context to the concept of "otherwise participat[ing]" as stated in R.C. 2307.71(A)(15)(a)(i), the trial court looked to a federal district court opinion applying Pennsylvania products liability law in the context of an eBay transaction. The trial court cited the federal district court ruling on a motion to dismiss, which stated:

> [Plaintiff] has not pled facts alleging that eBay is so connected to the overall chain of distribution as to suggest a relationship with the manufacturer or product "beyond their immediate sale." * * * Specifically, [Plaintiff] has not alleged that eBay, at any time, had anything more than a fleeting connection to the allegedly defective products. [Plaintiff] has not alleged that eBay ever had physical possession of the products, that they were moved or stored in a facility owned by eBay, or any other facts to suggest that holding eBay responsible would incentivize safety, that eBay is the only member of the marketing chain available, or that eBay is in a better position than [Plaintiff] to prevent the circulation of such defective vacuum tubes.

(Internal citations omitted.) *Inman v. Technicolor USA, Inc.*, W.D.Pa. No. CV 11-666, 2011 WL 5829024, *5 (Nov. 18, 2011).

**{¶27}** Considering the analysis in *Inman*, the trial court below analogized that Amazon, like eBay, provided an online forum for Tenkoris to "peddle its caffeine powder." The trial court stated that Tenkoris, not Amazon, provided the product information for listing on Amazon's Site, held the product, and arranged for shipping. The trial court noted that any issues with the product were not related to the services that Amazon provided. Regarding Stiner's claim that K.K. was under the impression that Amazon sold the caffeine powder, the trial court indicated that all evidence throughout the transaction identified The Bulk Source as the seller.

**{¶28}** Additionally, the trial court indicated several facts relevant to the policy consideration of Amazon's ability to safeguard against defects in the product. For instance, the court noted that Amazon never had physical possession of the caffeine powder, and never moved or stored the product. The trial court also indicated that Amazon "never fulfilled the sale by labeling, packaging, or shipping the product[,]" and noted the lack of evidence that Amazon's connection to the chain of distribution suggested a relationship with Tenkoris beyond the immediate sale.

**{¶29}** Stiner challenges the trial court's application of the law and argues that the trial court applied an "overly restrictive definition of 'supplier'" and ignored facts that Amazon considered relevant. Citing to a First District opinion, *Welch Sand & Gravel v. O&K Trojan*, Stiner contends that the trial court was required to "look to pre-statutory precedent and to the public policy underlying the products liability statute" to determine whether a defendant "'otherwise participated' in placing [a product] in the stream of commerce." *Welch Sand & Gravel v. O&K Trojan*, 107 Ohio App.3d 218, 227 (1st Dist.1995). In *Welch*, the court concluded that the defendant—a consignee—qualified as a "supplier" under R.C. 2307.71 where it facilitated the sale of a machine to the plaintiff. The court noted that while "it is a long reach to include a consignee of used goods in the definition of 'supplier,'" the public policy underlying the products liability statute required that the "risk of product-related injury" be shifted away from the consumer. *Id.* at 228. The Court reasoned the consignee's action in making the loader available at auction constituted placing the loader into the stream of commerce and brought the consignee within the definition of a supplier. *Id.* Ultimately, however, that court held that the plaintiff had not established a sufficient claim of liability against the consignee.

{¶30} Stiner contends that the public policy considerations in *Welch* should have been applied to determine Amazon's status as a supplier and liability for the caffeine powder. We find the facts of *Welch* distinguishable from the facts of this case, and its analysis inapplicable. In *Welch* the Court looked to the consignee that, by definition, did not own the product, but made it available for sale through an auction and considered whether those actions warranted the application of supplier status. Under the facts of the case at bar, Tenkoris offered the caffeine powder for sale though the Amazon Site. By comparison, Tenkoris is more akin to the consignee-supplier, whereas Amazon's role is more akin to that of the auctioneer in *Welch*. The court in *Welch* was not faced with the question of whether the auctioneer was liable as a "supplier" for the sale of a product. Accordingly, the public policy basis for applying seller status to the consignee does not translate to Amazon because the evidence shows that Tenkoris, like the consignee, may bear the risk for actually placing the product into the stream of commerce. *Welch* does not support Stiner's contention that Amazon's peripheral role in relation to the distributive chain of the caffeine powder placed Amazon in a position to ensure against risks or to incentivize safety.

{¶31} Other courts of Ohio have considered the meaning of "supplier" as it relates to entities that provide services or are otherwise involved with the sale or distribution of a defective product. In *Long v. Tokai Bank*, 114 Ohio App.3d 116, (2d Dist.1996), the court considered whether, regarding a products liability claim, the defendant was the "supplier" of a machine it leased, where it included in the lease a provision requiring that the lessee maintain the equipment pursuant to the manufacturer's instructions. The Second District reasoned that, although the defendant retained title to the machine and required the lessee to follow the manufacturers' maintenance schedule to preserve the machine, the defendant (1) "did not participate in the

selection of the product or in negotiations about the product" and (2) as lessor, the defendant's "role was one of offering the use of money, not of supplying the [machine]." *Id*. at 125. The court expressed concern over "'catastrophic impact[s] on commerce'" that might result from placing the responsibility for detecting defects on entities that "'are not equipped to pass upon the quality of the myriad of products they are called upon to finance'" and which do not have a direct impact in the manufacturing process or relationship with the manufacturer. *Id*. at 125, quoting *Nath v. Natl. Equip. Leasing Corp.*, 497 Pa. 126, 132, 439 A.2d 633 (1981). In *Tokai*, the court stated that such "tangential participation does not justify the imposition of strict liability" and held that the lessor was not a "supplier" for purposes of the products liability claims. *Id*. at 126, quoting *Nath* at 132.

**{¶32}** The Sixth District considered a products liability claim asserted against a non-profit entity that, for purposes of its annual go-kart race fundraiser, had purchased go-karts and then sold them to companies and organizations who wished to participate in the race by sponsoring a car. *Morris v. Junior Achievement of Northwest Ohio, Inc.*, 6th Dist. Lucas No. L-08-1420, 2009-Ohio-6340, ¶ 8-9. In determining whether the defendant met the definition of a "supplier" as defined by R.C. 2307.71, the Sixth District held that

> no evidence was presented in the proceeding below that [the defendant] conducted its business for the purpose of selling, distributing, leasing, preparing, blending, packaging, labeling or otherwise placing go-karts into the stream of commerce, or conducted its business for the purpose of installing, repairing or maintaining any aspect of go-karts. Rather, [the defendant] passed along the go-karts, and the cost of those vehicles, to the participants in the [go-kart race.] Accordingly, [the defendant] was not a supplier of go-karts as that term is used in Ohio's Product Liability Act.

*Id*. at ¶ 24.

**{¶33}** Although such cases are neither controlling nor directly on point, a review of case law from other jurisdictions shows a disinclination to hold Amazon liable as a seller, distributor,

or supplier of the products offered for sale on the Amazon Site by third-party sellers. *See Fox v. Amazon.com, Inc.*, M.D.Tenn. No. 3:16-CV-03013, 2018 WL 2431628, *8 (May 30, 2018) (concluding that Amazon was not a seller under the Tennessee Products Liability Act); *Erie Ins. Co. v. Amazon.com Inc.*, D.Md. No. CV 16-02679-RWT, 2018 WL 3046243, *3 (Jan. 22, 2018) (holding that Amazon was not a seller under Maryland's UCC); *Oberdorf v. Amazon.com, Inc.*, 295 F.Supp.3d 496, 499 (M.D.Pa. 2017) (declining to impose liability as a "seller" on Amazon under Pennsylvania Strict Products Liability Law); *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 Fed.Appx. 879 (Fed.Cir.2017) (holding that Amazon was not the seller of a third-party product under federal copyright law); *McDonald v. LG Elecs. USA, Inc.*, 219 F.Supp.3d 533, 542 (D.Md. 2016) (holding that "Amazon's role as the 'platform' for the third-party sales does not qualify it as a merchant or a seller under Maryland's UCC."); *Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, D.N.J. No. CV 17-2738 (FLW) (LHG), 2018 WL 3546197, *10 (July 24, 2018) (holding that where "Amazon facilitates rather than drives the sale" it does not act as a product seller under New Jersey products liability law).

**{¶34}** Stiner has not demonstrated that the trial court erred by looking to *Inman* to give meaning to the phrase "otherwise participated" in the context of a supplier under R.C. 2307.71(A)15(a)(i). *Inman*, W.D.Pa. No. CV 11-666, 2011 WL 5829024. We observe no error in the trial court's consideration of the actions of the entity that chose the product to offer for sale and then sourced, physically controlled, and fulfilled orders for that product, in contrast with the role of the platform through which that entity chose to offer the product for sale. Based on this Court's review of the relevant case law, we conclude that the trial court did not err in its interpretation and application of the law in this case.

2. <u>Absence of a dispute of fact</u>

**{¶35}** Stiner argues that issues of fact precluded the grant of summary judgment, and that the trial court failed to construe the evidence in favor of Stiner as the non-moving party. However, Stiner has not identified any factual dispute as to the specific actions Tenkoris and Amazon each took with respect to the transaction that resulted in the sale of the pure caffeine powder to K.K. Although Stiner asserts a "divergent view" of Amazon's role in the transaction, Stiner has not pointed to evidence, relevant to whether Amazon otherwise participated in placing the caffeine powder in the stream of commerce, that the trial court failed to construe in its favor.

**{¶36}** The evidence clearly demonstrates that Tenkoris made the decision to sell the caffeine powder, engaged the services of Amazon in order to offer the product, procured the materials, determined the terms of the sale, retained possession of the product at all times, and ultimately fulfilled the order by packaging and shipping the product to K.K. There is nothing in the record contradicting the evidence that Amazon provided a platform through which Tenkoris, as a third-party seller, offered and sold products in an online marketplace. There is no dispute that, as a part of its service, Amazon displayed the product listing to customers searching for related products, notified the seller when a sale of the product was made, and captured payment for the sale. Further, there is simply no evidence in the record to support Stiner's claim that Amazon took any action to lead K.K. to believe she was making the purchase from Amazon rather than the seller, and no evidence that Amazon somehow falsely mislead K.K. to believe she was purchasing a "safe" product when, as Stiner alleges, she was not. The evidence shows that The Bulk Source was clearly identified as the seller of the product at all times relevant to K.K.'s purchase of the caffeine powder.

**{¶37}** Stiner has not shown any dispute of facts material to an essential element of the claim. In the absence of a factual dispute as to the respective actions of Tenkoris and Amazon, the issue to be determined is how those actions factor in to supplier liability under the applicable products liability statutes. Stiner's contention that Amazon is a supplier relies on allegations of Amazon's complicity in a scheme to market products to consumers, engender trust by implying the ensured safety of the products, and, meanwhile, willfully disregard evidence of known dangers. We are cognizant of the requirement that evidence be viewed in favor of Stiner as the non-moving party. *Grafton*, 77 Ohio St.3d at 105. Nevertheless, the facts in evidence do not support Stiner's contention. Reasonable minds can come to but one conclusion when viewing the evidence regarding Amazon's role in this transaction; the evidence cannot support Stiner's claim that Amazon was a supplier of the caffeine powder. Based on the foregoing, we conclude that the trial court did not err in interpreting the law and applying the law to the relevant facts to determine that Amazon is not a "supplier" within the meaning of R.C.2307.71(A)(15).

3. Stiner's Public Policy Argument

**{¶38}** Stiner cites to "*Inman*, *Welch*, and *Friedland*" to support the contention that public policy dictates Amazon should be held liable as a supplier because doing so would incentivize safety. *See Inman*, *supra*; *Welch*, *supra*; *Samuel Friedland Family Enterprises v. Amoroso*, 630 So.2d 1067, 1068 (Fla.1994). Stiner's public policy arguments fail under the facts of this case because Stiner has not pointed to evidence to demonstrate that holding Amazon liable would incentivize safety. The facts demonstrate that Amazon was not in a reasonable position to safeguard against allowing this caffeine powder, as a potentially dangerous product, to enter the stream of commerce. Amazon was not conducting business for the purpose of selling caffeine powder and did not choose to offer the product for sale. Amazon merely

provided a service and platform for Tenkoris to offer and sell its product and, as part of this service, Amazon displayed Tenkoris's listing for caffeine powder to customers searching for relevant products. Amazon had no role in procuring the caffeine powder from its manufacturer, storing, packaging, or distributing the product. Tenkoris determined the sale price, provided all product information for the listing, packaged and fulfilled all orders. Amazon lacked discretion as to the product specifications or listing details, and exercised no control over the packaging or fulfillment of orders.

**{¶39}** Stiner has not presented a compelling basis for extending the definition of "supplier" to subject a service provider such as Amazon to liability for its very limited role in the sale of a product. Stiner has not identified any instances where a court has applied the law with such an expansive interpretation of the definition of supplier that it could encompass imposing liability on Amazon under facts similar to those at issue here. Upon the facts of this case, this Court declines to expand, on the basis of public policy, the definition of "supplier" in R.C. 2307.71, to extend liability by shifting the burden to safeguard consumers against third-party seller's products to an enterprise such as Amazon.

4. Conclusion

**{¶40}** The trial court correctly concluded that Amazon met its burden to show the absence of a genuine dispute as to Amazon's role in this particular transaction. Furthermore, Stiner has not directed this Court to any evidence in the record to establish an essential element of Stiner's products liability claims: that Amazon is a supplier. Despite Stiner's claim that the trial court failed to consider evidence, Stiner failed to point to any evidence to demonstrate that Amazon "otherwise participated" in placing Tenkoris's product into the stream of commerce. This evidentiary failure renders immaterial any facts relating to other elements of these claims,

and confirms the absence of any genuine issues of material fact. Consequently, this Court concludes that the trial court did not err in granting summary judgment on the claims Stiner presented in counts four through seven.

## E. Claims under Ohio Food and Drug Safety Act

{¶41} Stiner argues that the trial court erred by granting summary judgment on the claims under the pure food and drug law. "The following acts and causing them are prohibited" by R.C. 3715.52(A):

> (1) The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded;
>
> (2) The adulteration or misbranding of any food, drug, device, or cosmetic;
>
> (3) The receipt in commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise;
>
> (4) The sale, delivery for sale, holding for sale, or offering for sale of any article in violation of section 3715.61 or 3715.65 of the Revised Code; * * *.

Additionally, "a dietary supplement is adulterated if it presents a significant or unreasonable risk of illness or injury under the conditions of use recommended or suggested in its labeling or, if there are no recommended or suggested conditions of use, under the ordinary conditions of use." R.C. 3715.83

{¶42} Considering R.C. 3715.52, the trial court observed that the statute does not define the terms "sale" or "offering for sale" as stated in R.C. 3715.52(A)(1). The court looked to define the term "sale" and observed the following definition, which it attributes to Black's Law Dictionary (5th Ed.1979):

> A contract between two parties, called, respectively, the "seller" (or vendor) and the "buyer" (or purchaser), by which the former, in consideration of the payment

or promise of payment of a certain price in money, transfers to the latter the title and possession of the property.

The trial court determined, based on the previous discussion of the evidence, that Tenkoris, not Amazon, was the seller of the caffeine powder. The court concluded that Amazon did not manufacture, sell, deliver, or offer for sale the caffeine powder at issue as stated in R.C. 3715.52(A)(1). Further, the trial court determined that R.C. 3715.52(A)(2) and (3) were inapplicable because Amazon was never in a position to cause the adulteration or misbranding of the product and had never been in possession or control of the caffeine powder.

{¶43} The trial court stated that, despite the lack of a precise definition of "offering for sale", it is clear, when viewed from the perspective of which entity created the listing to sell the product on Amazon's Site, that the entity offering the caffeine powder for sale was Tenkoris, not Amazon. The trial court reasoned that, while Amazon created a template for sellers to upload products to sell in its marketplace, the seller provided the information to populate the fields. Therefore, Tenkoris set the price, created the product description, and supplied the product images and all other product information to generate the listing that constituted an offer for the sale of the caffeine powder: an offer which K.K. accepted. Having concluded that Amazon met its burden to show the absence of a genuine issue of material fact as to whether Amazon sold or offered for sale the caffeine powder, the trial court further concluded that Stiner did not meet the burden to show an issue of fact for trial. Accordingly, the trial court granted summary judgment on Stiner's claims under the Ohio Food and Drug Safety Act.

{¶44} It is Stiner's position that the parties presented "divergent accounts of Amazon's role" in the sale of the caffeine powder that caused Logan's death, which created questions of fact. Stiner also asserts that the trial court erroneously construed the facts in favor of Amazon and applied an "overly restrictive construction of the key phrase * * * 'offering for sale.'"

However, Stiner's argument actually aims to challenge the manner in which the trial court approached its analysis, viewing the listing on Amazon's site from the standpoint of which entity created it.

**{¶45}** In support of its argument, Stiner contends that Amazon's actions could be construed as an offer for sale. Stiner cites to an unreported federal court decision from the Western District of Washington examining the definition of liability for an "offer to sell" under 35 U.S.C. 271(a) in the context of patent infringement. *See Milo & Gabby, LLC v. Amazon.com, Inc.*, W.D.Wash. No. C13-1932-RSM, 2015 WL 4394673 (July 16, 2015). In that case, the court stated that "where an item is 'sold' by a third-party vendor and 'fulfilled' by Amazon," the actions of Amazon "*could be regarded* as an offer for sale for the reasons discussed in [*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed.Cir.2005)]. (Emphasis added.) *Id*. at *14. The court in *Milo & Gabby*, concluded there were issues as to who made the offer for sale. *Id*. The analysis in *Milo & Gabby*, and its comparison to *MEMC*, involves a completely different statutory scheme and the court's focus in that case was based, at least in part, on the particular purpose behind the addition of the phrase "offer to sell" in the Patent Act. Moreover, that court subsequently entered a judgment finding that Amazon was not liable for offering to sell the product at issue because Amazon, through its website, did not communicate or provide the description of the products, did not set the price or quantities for the purchase of the products, and did not "communicate that it was willing to enter into a bargain to sell the * * * products." *Milo & Gabby, LLC v. Amazon.com*, 144 F.Supp.3d 1251, 1253 (W.D.Wash.2015).

**{¶46}** We find Stiner's argument for such a broad construction of the term "offer to sell" unpersuasive. It is true that R.C. 3715.52(A)(1) does not define "sell" or "offer to sell."

However, where a term is not defined in a statute, we give the undefined term its plain and ordinary meaning. *Great Lakes Bar Control, Inc. v. Testa*, Slip Opinion No. 2018-Ohio-5207, ¶ 8. When interpreting the language of a statute, "'[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage.'" *Id*. quoting R.C. 1.42. "Thus, we must consider the ordinary meaning of [offer to sell] in the context of [actions prohibited under Ohio's Food and Drug Safety Act]." *Id*. at ¶ 10.

{¶47} The trial court looked to Black's Law Dictionary (5th Ed.1979) to define a sale in contractual terms where a seller conveys title and possession of property to the buyer in consideration for payment. Similarly, the most recent edition of Black's Law Dictionary defines "sale" as "[t]he transfer of property or title for a price. *See* UCC § 2-106(1)." Black's Law Dictionary (10th Ed.2014). It defines "offer" in relevant part as "[t]he act or an instance of presenting something for acceptance * * *." *Id*. Hence, an "offer to sell," pursuant to its plain and ordinary meaning in the context of R.C. 3715.52(A)(1), involves the act of presenting for acceptance the transfer of title or of property consisting of "any food, drug, device, or cosmetic that is adulterated or misbranded," for a price. This definition is consistent with the trial court's analysis of the role Amazon played in the sale of the caffeine powder.

{¶48} Additionally, Stiner urges that the trial court should have considered several factors in determining Amazon's status as an "offeror" of the product. This includes Stiner's contention that Amazon "promoted" the caffeine powder to K.K., "engendered her trust" in Amazon, lead K.K. to believe she was "dealing" with Amazon, listed itself as a merchant on the credit card statement, and profited from the sale. As discussed above, Stiner has not demonstrated that the facts of this case support the claim that Amazon actively sought to promote the caffeine powder to K.K. as a "safe product" sold by Amazon. Regarding Stiner's

assertion that K.K.'s mother's credit card statement reflected that Amazon processed the charge to her account—an uncontested fact—Stiner failed to explain how a *post-transaction* statement could have misled K.K. as to the identity of the seller. More significantly, Stiner has not explained how Amazon processing the payment, or displaying the product listing—created by Tenkoris—to customers searching for pre-workout products, could render Amazon liable for selling or offering to sell Tenkoris's caffeine powder.

{¶49} Further, Stiner attempts to analogize the facts of this case to a scenario where a drug store might offer this product for sale and direct a customer requesting post-workout supplements to this caffeine powder. However, Stiner's analogy disregards a crucial distinction between the role of Amazon and that of a drug store. Whereas a store typically selects the products it places on its shelf and offers them for sale, Amazon has only provided the forum or marketplace which Tenkoris utilized to offer and sell its product. Tenkoris, not Amazon, chose to offer this product and, as the trial court correctly recognized, Tenkoris determined the terms of the sale and product description. Tenkoris provided the information which allowed potential buyers to find the product, accept the offer, and purchase the caffeine powder product that Tenkoris offered for sale.

{¶50} The trial court concluded that Amazon met its burden to show the absence of a genuine dispute as to Amazon's liability for the sale of an allegedly adulterated product. Stiner failed to meet the reciprocal burden under Civ.R. 56(E) to demonstrate the existence of a material fact regarding an essential element: whether Amazon sold or offered to sell a product prohibited by R.C. 3715.52(A)(1). Here again, we recognize that evidence must be viewed in favor of Stiner as the non-moving party. *See Grafton*, 77 Ohio St.3d at 105. However, Stiner has not demonstrated the existence of evidence sufficient to permit reasonable minds to reach

different conclusions on this essential element of the claim, and has not supported the contention that the trial court failed to construe any relevant evidence in Stiner's favor. Consequently, this Court concludes that the trial court did not err in granting summary judgment on the claims Stiner presented in counts one, two, and three.

## F. **Conclusion**

**{¶51}** Stiner's assignments of error one, two, three, and four are overruled.

### Assignment of Error V

**In applying the Communications Decency Act, 47 U.S.C. §230(c), the trial court erred in: (1) finding that Stiner seeks to hold Amazon liable as the publisher of third-party information, rather than as the supplier of the caffeine powder; and (2) suggesting that, if it applies, the Communications Decency Act would provide immunity under the facts of this case.**

**{¶52}** Amazon presented the trial court with an argument in its defense claiming that the Communications Decency Act ("CDA"), 47 U.S.C. 230, bars all of Stiner's claims against Amazon. Stiner disputed the applicability of this statute in this case. In its summary judgment ruling, despite having already granted summary judgment on Stiner's claims against Amazon, the trial court concluded as follows:

> After reviewing cases from other jurisdictions that have considered an[d] applied section 230 [of the CDA] to cases similar to the case at hand, the court finds that to the extent that section 230 [of the CDA] is applicable to the instant case, the immunity provided thereunder would further support the finding already made by the court that Amazon is not a supplier or seller of the pure caffeine powder and that it cannot be held liable under the specific facts of this case.

**{¶53}** Stiner contends the trial court erred in its interpretation of Stiner's claims and in its application of the CDA. In its statement, it appears that the trial court concluded that *if* this section of the CDA is applicable, then it would support the conclusion made by the trial court that Amazon is not liable as a supplier or seller. The trial court did not, however, actually make

such a finding regarding applicability and, in any event, was not required to do so in light of the fact that it granted summary judgment in favor of Amazon on all of Stiner's claims. This Court will not decide this issue in the first instance. *Price v. Carter Lumber Co.*, 9th Dist. Summit No. 26243, 2012-Ohio-6109, ¶ 22 ("As this Court remains a reviewing court, we will not consider the issues relevant to the motion for summary judgment in the first instance.") However, in light of our resolution of the first four assignments of error affirming the trial court's grant of summary judgment on all of Stiner's claims against Amazon, we must conclude that the issue of Amazon's purported affirmative defense raised in Stiner's fifth assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

**{¶54}** Stiner's first, second, third, and fourth assignments of error are overruled. This Court declines to address Stiner's fifth assignment of error as it is moot. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BRIAN K. BALSER, Attorney at Law, for Appellant.

PAUL GRIECO, JACK LANDSKRONER and EDWARD S. JERSE, Attorneys at Law, for Appellant.

JOYCE D. ELEMAN, Attorney at Law, for Appellee.

TRACEY L. TURNBULL, Attorney at Law, for Appellee.

JULIE L. HUSSEY, Attorney at Law, for Appellee.

ERIC D. MILLER, Attorney at Law, for Appellee.